Case 1:13-cv-04298-PGG-JLC Document 9 Filed 11/12/13 Page 1 of 16

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/12/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JULIO CASTILO,[1]

      Petitioner,

 -v-

UNITED STATES OF AMERICA,

      Respondent.
------------------------------------------------------------X

REPORT AND
RECOMMENDATION

13 Civ. 4298 (PGG) (JLC)
98 Cr. 0438 (PGG)

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable Paul G. Gardephe, United States District Judge:**

 Pro se petitioner Julio Castilo ("Castilo") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2255 vacating his judgment of conviction entered on December 19, 2000, and amended on June 21, 2010.[2] Castilo filed his Petition on June 13, 2013, more than 12 years after his conviction.[3] On October 2, 2013, Judge Gardephe referred this matter to me for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). For the reasons set forth below, I recommend that the Petition be dismissed as time-barred.

---

[1] Various documents in the record refer to Julio Castilo as Julio Castillo. However, the Court will refer to petitioner as Castilo, as that is the spelling used in his petition.

[2] In an Order dated July 31, 2013 (98 Cr. 0438, Dkt. No. 349; 13 Civ. 4298, Dkt. No. 3), Judge Gardephe noted that Castilo's judgment of conviction was amended on June 29, 2010, citing to Dkt. No. 330; however, the Order at Docket No. 330 is dated June 21, 2010. (98 Cr. 0438, Dkt. No. 330).

[3] Although the petition was not filed with the Court until June 17, 2013, under the "Prison Mailbox Rule," a petition is considered "filed" by a pro se prisoner on the date it is given to a prison official for mailing. Houston v. Lack, 487 U.S. 266, 276 (1988). Castilo's petition does not state the date on which it was given to prison officials for mailing, but indicates it was signed on June 13, 2013. I therefore infer that Castilo gave it to prison officials on that day as well. See, e.g., Peralta v. Connelly, 06 Civ. 5360 (DAB) (MHD), 2008 WL 8050791, at *4 n. 6 (S.D.N.Y. Apr. 18, 2008).

## I. BACKGROUND

### A. Castilo's Guilty Plea and Sentence

On September 5, 2000, having waived indictment, Castilo appeared with counsel before Magistrate Judge Theodore Katz to enter a guilty plea to Count One of the Information in his case, which charged him with a violation of 18 U.S.C. § 1962(c) – participation in a criminal enterprise through a pattern of racketeering activity. Transcript of Plea Proceedings ("Plea Tr."), 2-4; Information, 5; 98 Cr. 0438, Dkt. No. 152.[4] The Court advised Castilo, among other things, as to the consequences of his guilty plea, including that he could face up to 20 years in prison, and to his right to a jury trial. Plea Tr., 4-5. Then, before accepting Castilo's plea, Judge Katz elicited answers from Castilo to assure that the plea was entered knowingly and voluntarily, and that there was a factual basis for it. Plea Tr., 5-7. The Court also confirmed that Castilo had read the Information and had discussed it with his attorney. Plea Tr., 8.

After Castilo entered a plea of guilty to Count One of the Information, the Court informed him of the rights he was waiving by entering a guilty plea and confirmed that he had not been threatened into changing his plea or offered any promises for doing so. Plea Tr., 8-10. The Assistant United States Attorney then discussed the terms of the plea agreement, stating that the stipulated, agreed-upon sentence under the Sentencing Guidelines was 20 years and that Castilo was forfeiting his right to appeal or file a habeas petition if his sentence was at or below the stipulated sentence; Castilo affirmed his understanding of those terms. Plea Tr., 11-12. The Court reiterated that, by signing the agreement, Castilo was giving up any right to appeal a sentence at or below 20 years. Plea Tr., 13. Castilo acknowledged his understanding of all these matters and repeated his desire to enter a guilty plea. Id.

---

[4] The transcript of the plea proceedings, as well as the Information, will be placed on the docket to supplement the record in this case.

Finally, the Court verified that Castilo was entering into the plea voluntarily and of his own free will, and Castilo admitted that he had committed the offense set forth in Count One of the Information. Id.[5] Specifically, Castilo confirmed his intent to enter a guilty plea to the first two racketeering acts and in his plea allocution stated that: "I went to Jersey with the rest of the fellows and I went to rob a man that had drugs, and I came back to the Bronx with the guy and we . . . took him to Orchard Beach and we killed him." Plea Tr., 13-14. Castilo acknowledged that he was a member of the 165th Street Organization, which was responsible for these acts, and that it was an organization "generally engaged in acts of robbery or kidnapping or trafficking in narcotics in order to further its purposes." Plea Tr., 14. Following Castilo's allocution, Judge Katz found that Castilo understood the nature of the charges against him and the consequences of his guilty plea, that the plea was made voluntarily, knowingly, and of his own free will, and that there was a factual basis for the plea. Plea Tr., 18. Accordingly, Judge Katz recommended that the Honorable Robert L. Carter, the assigned district judge, accept Castilo's plea of guilty to Count One of the Information. Id.

At the sentencing hearing on December 18, 2000, Judge Carter accepted Castilo's guilty plea, imposed a sentence of 20 years imprisonment, and confirmed that Castilo understood he

---

[5] The Information provided that Castilo was a member of the 165th Street Organization, which was "a criminal organization whose members and associates engaged in robbery, robbery of individuals who trafficked in narcotics, kidnapping, murder, other acts of violence and narcotics trafficking in, among other places, the Bronx, New York, New Jersey and Pennsylvania." Information, ¶ 1. The Organization was described as constituting an enterprise under 18 U.S.C. § 1961(4) that "was engaged in and its activities affected interstate and foreign commerce." Information, ¶ 2. "The members and associates of the enterprise participated in narcotics trafficking, namely heroin, powdered cocaine and cocaine base." Information, ¶ 4(c). The Information stated that Castilo committed the following acts, which established a pattern of racketeering activity: in or about March of 1995, Castilo, together with others, conspired to rob Francisco Soto; on or about March 15, 1995, Castilo, together with others, committed and aided and abetted the commission of the robbery of Francisco Soto; and on or about March 15, 1995, Castilo, together with others, conspired to murder Francisco Soto. Information, ¶¶ 7-8.

3

had waived his right to appeal. Transcript of Sentencing Proceedings, 5.[6] The judgment of conviction was entered on December 19, 2000. (98 Cr. 0438, Dkt. No. 191). Castilo did not appeal his conviction.

### B. Post-Conviction Proceedings

On June 21, 2010, Judge Gardephe, to whom the case had been reassigned, issued an Order explaining that on February 9, 2001, Castilo had been sentenced in New York state court to an indeterminate term of 10 to 20 years imprisonment, to run concurrently with the federal sentence imposed by Judge Carter, but that following the imposition of the state sentence, Castilo had not been returned to federal custody and had not been credited with any time towards his federal sentence. (98 Cr. 0438, Dkt. No. 330). With the consent of both Castilo and the Government, Judge Gardephe ordered that the December 19, 2000 judgment of conviction be amended to include a recommendation that the federal sentence be served concurrently with the state sentence and that the Bureau of Prisons take steps to ensure that Castilo was credited time for "fully concurrent service" of both his federal and state sentences. Id.

On June 13, 2013, Castilo filed the instant motion under 28 U.S.C. § 2255 ("Castilo Pet.") challenging the legality of his conviction by asserting a claim of "actual innocence." (Dkt. No. 1). By Order dated July 31, 2013, Judge Gardephe ordered Castilo to file an affirmation within 60 days demonstrating why his petition should not be dismissed as time-barred. (Dkt. No. 3). On September 4, 2013, Castillo moved by order to show cause why a writ of habeas corpus should not be granted. (Dkt. No. 4). By Order dated September 5, 2013, Judge Gardephe denied the request for an order to show cause and directed Castilo to respond to the Court's July 31 Order. (Dkt. No. 5). Castilo responded in a document styled as an "Affidavit in Response to Court's Order to File an Affirmation to it's [sic] Order Showing Cause Why Petitioner's Motion

---

[6] The transcript of the sentencing proceedings are attached to Castilo's § 2255 petition. (Dkt. No. 1.)

4

Should Not be Denied as Time-Barred" ("Castilo Aff."), dated September 16, 2013, and filed on September 25, 2013. (Dkt. No. 8).[7] In that affidavit, Castilo maintains that his "actual innocence" claim allows him to overcome the statute of limitations bar set forth in the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Castilo Aff., 2-3. Castilo contends that "actual innocence" does not mean that "he must be innocent of all the bad deeds;" rather, he contends that he is innocent because the record does not contain evidence demonstrating that he violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Castilo Aff., 3-4; Castilo Pet., 3-9.[8]

## II. DISCUSSION

### A. **Legal Standard**

Section 2255 provides a prisoner in federal custody a limited opportunity to challenge collaterally the legality of the sentence imposed on him. United States v. Addonizio, 442 U.S. 178, 185 (1979). To obtain relief under Section 2255, a prisoner in federal custody must show

---

[7] In his affidavit, Castilo states that he never received Judge Gardephe's Order dated July 31, 2013. Castilo Aff., 1. To prevent this problem in the future, Castilo requests "to have all future filings be electronically mailed to him via the Federal Bureau of Prisons 'Trulinks' system. The Clerk need only send [him] a judicial email address and then accept his request via the internet at www.corrlinks.com." Castilo Aff., 2. According to the Federal Bureau of Prisons website, TRULINCS (Trust Fund Limited Inmate Computer System) "is a program that provides inmates with limited computer access, to include the capability to send and receive electronic messages without having access to the Internet." TRULINCS FAQs, FEDERAL BUREAU OF PRISONS, http://www.bop.gov/inmate_programs/trulincs_faq.jsp (last visited 11/8/2013). A prisoner can only receive electronic messages from individuals who have first provided their email address and then been approved by prison staff. The Southern District of New York does not currently have an email address to provide to Castilo that would make it possible to communicate with him via TRULINCS. The Court is working with the Office of Pro Se Litigation to determine if TRULINCS would be a viable option for providing incarcerated prisoners with electronic filings at some point in the future. If Castilo has a separate email address, he should provide that to the Court.

[8] Castilo's underlying habeas petition more fully develops his claim of "actual innocence." Accordingly, the Court will also consider the arguments set forth in his petition to determine whether Castilo's claim of innocence is sufficient to allow him to overcome AEDPA's statutory bar. See, e.g., Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) ("It is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest.") (internal citations and alterations omitted).

5


that his sentence: (1) was imposed in violation of the U.S. Constitution or the laws of the United States; (2) was entered by a court without jurisdiction to impose the sentence; (3) exceeded the maximum detention authorized by law; or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). Collateral relief under Section 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). As the Second Circuit has explained, "[t]he reasons for narrowly limiting the relief permitted under § 2255—a respect for the finality of criminal sentences, the efficient allocation of judicial resources, and an aversion to retrying issues years after the underlying events took place—are 'well known and basic to our adversary system of justice.'" Id. (quoting Addonizio, 442 U.S. at 184 & n.11).

As a form of collateral review, "[a] section 2255 motion may not be used as a substitute for a direct appeal." Rosa v. United States, 170 F. Supp. 2d 388, 396 (S.D.N.Y. 2001) (citing United States v. Frady, 456 U.S. 152, 165 (1982)). Accordingly, "[w]here a petitioner does not bring a claim on direct appeal, he is barred from raising that claim in a subsequent section 2255 proceeding unless he can establish both cause for the procedural default and actual prejudice resulting therefrom." Id. (collecting cases); see, e.g., Aponte–Vega v. United States, Nos. 01 Civ. 1160 (KTD), 91 Cr. 595 (KTD), 2003 WL 22097506, at *1 (S.D.N.Y. Sept. 9, 2003) ("A § 2255 motion to vacate a judgment may not be used to raise a claim that was available at the time of the Petitioner's direct appeal unless it is coupled with a showing of cause and a demonstration of resulting prejudice.") (citation omitted).

## B. **Timeliness of Petition**

"A motion by a federal prisoner for postconviction relief under 28 U.S.C. § 2255 is subject to a one-year time limitation that generally runs from 'the date on which the judgment of conviction becomes final.'" Clay v. United States, 537 U.S. 522, 524 (2003) (quoting 28 U.S.C. § 2255)).[9] "[F]or purposes of Section 2255 motions, an unappealed federal criminal judgment becomes final when the time for filing a direct appeal expires." Moshier v. United States, 402 F.3d 116, 118 (2d Cir. 2005). At the time Castilo was sentenced, Rule 4(b) of the Federal Rules of Appellate Procedure provided that a criminal defendant had 10 days after the entry of judgment to file a notice of appeal with the district court; the rule was revised in 2009 to extend the filing deadline to 14 days after the entry of judgment. Fed. R. App. P. 4 advisory committee's notes on 2009 amendments; Fed. R. App. P. 4(b)(1)(A)(i).

Castilo's original judgment of conviction was filed on December 19, 2000, and the judgment was amended on June 21, 2010. Although the date of Castilo's final judgment is not immediately apparent from the record, Castilo did not file a notice of appeal within 10 days of the December 19, 2000 date or within 14 days of the June 21, 2010 date. Even assuming, arguendo, that June 21, 2010 is the applicable date of entry of judgment, Castilo's conviction became final 14 days later on July 5, 2010 (the date his time to appeal expired), and he had one

---

[9] AEDPA also provides that the one-year statute of limitations period may run from the latest of three other dates: (1) "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;" (2) "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;" or (3) "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f). These provisions are inapplicable to Castilo's case.

year – until July 5, 2011 – to file his Section 2255 habeas petition. Since he did not file his petition until June 13, 2013, the petition is untimely under AEDPA.[10]

## C. Equitable Tolling

AEDPA's statute of limitations is not jurisdictional and, consequently, does not serve as an absolute bar to all claims brought after the limitations period has run. Holland v. Florida, 130 S. Ct. 2549, 2560 (2010); Green v. United States, 260 F.3d 78, 82 (2d Cir. 2001). In order to

---

[10] As an initial matter, Judge Gardephe's Order dated July 31, 2013, states that Castilo's conviction was amended on June 29, 2010 (actually June 21, 2010, see supra n.2) and became final on July 1, 2010. The Court surmises that the July 1 date was calculated by adding 10 days to the June 21 date, as opposed to the 14 days mandated by the updated Rule 4(b), which would have made Castilo's judgment final on July 5, 2010. Still, the Court is not persuaded that the amended judgment should have any effect on the finality of Castilo's conviction. As described above, the Order issued on June 21, 2010 "amended" the December 19, 2000 judgment by "includ[ing] a recommendation that the federal sentence be served concurrently with the state sentence." (98 Cr. 0438, Dkt. No. 330). Although the date of an amended judgment may be used to determine the final date of a petitioner's conviction for purposes of habeas review in cases where the amended judgment "alter[s] the substantive rights affected by the first judgment," the "amendment" in Castilo's case did not affect his original conviction or sentence. United States v. Ruiz, No. 08 Cr. 453 (NGG), 2010 WL 5102259, at *2 n.1 (E.D.N.Y. Dec 8, 2010) (finding that petitioner's conviction became "final on the date the initial judgment [was] entered" in spite of amended judgment and citing Farkas v. Rumore, 101 F.3d 20, 22 (2d Cir. 1996) for proposition that: "Where a judgment is reentered, and the subsequent judgment does not alter the substantive rights affected by the first judgment, the time for appeal runs from the first judgment. This doctrine has been applied to judgments reentered to correct technical errors.").

Moreover, it is unlikely that Castilo could appeal his "amended" judgment, further suggesting that the June 21, 2010 date has no bearing on the date his conviction became final. In Hernandez v. Shearin, for example, the petitioner's judgment was only amended to correct a clerical error and the Court found that the date of his amended judgment was immaterial to calculating the date his conviction became final because "there was no possibility of appeal from the amended judgment, as [his] conviction and sentence were unaffected." Nos. 01 Civ. 9847 (DC), 97 Cr. 1245 (DC), 2002 WL 1431721, at *2 n.3 (S.D.N.Y. July 2, 2002). The court there relied on a Ninth Circuit holding that "[f]or purposes of the one-year statute of limitations period . . . whether an amended judgment changes the date on which conviction becomes final turns on the possibility of appeal from such judgment." Id. (citing United States v. Colvin, 204 F.3d 1221, 1224 (9th Cir. 2000)). The Second Circuit has also observed that remanding a case and requiring an amended judgment for a purely ministerial act does not affect the finality of the judgment "because the lower court's entry of a corrected judgment could not give rise to a valid appeal." Burrell v. United States, 467 F.3d 160, 164 (2d Cir. 2006). In any event, because Castilo's petition is time-barred under either scenario, it is of no consequence whether his amended judgment altered the date his conviction became final.

8

equitably toll a habeas petition, a petitioner must show: "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland, 130 S. Ct. at 2562 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); see also Hizbullahankhamon v. Walker, 255 F.3d 65, 75 (2d Cir. 2001). The first prong of the inquiry turns on whether "the petitioner act[ed] as diligently as reasonably could have been expected under the circumstances[.]" Baldayaque v. United States, 338 F.3d 145, 153 (2d Cir. 2003). The second prong clarifies that equitable tolling is only available in "rare and exceptional circumstance[s]." Villanueva v. United States, 346 F.3d 55, 62 (2d Cir. 2003) (citing Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000)).

Castilo makes no argument that he has been diligently pursuing his rights or that he was somehow prevented from filing, and he presents no facts that would justify tolling the limitations period. Castilo waited more than 12 years from the date of his conviction and almost three years from the date of the entry of his amended judgment to file a claim of "actual innocence." This inordinate delay precludes any finding of reasonable diligence. See, e.g., Mamaradlo v. United States, 8 Fed. Appx. 39, 41 (2d Cir. 2001) (affirming district court's conclusion that petitioner who waited three years after her conviction became final to file her § 2255 petition was not entitled to equitable tolling when she "failed to demonstrate the requisite extraordinary circumstances, especially given that her own behavior contributed to the late filing of this motion"). Castilo fails to offer evidence of any extraordinary circumstances preventing him from filing, and thus cannot show that he is entitled to equitable tolling of the statute of limitations on his habeas petition. See, e.g., Negron v. United States, 394 Fed. Appx. 788, 795 n.7 (2d Cir. 2010) (concluding petitioner's case did not present exceptional circumstances and comparing cases where egregious facts warranted equitable tolling).

9

## D. Claim of Actual Innocence

Citing Rivas v. Fischer, 687 F.3d 514 (2d Cir. 2012), Castilo asserts that his "actual innocence" justifies the consideration of the merits of his petition even if it is otherwise found to be untimely. Castilo Aff., 2. The Second Circuit held in Rivas that there is an equitable exception to AEDPA's one-year limitation period where a petitioner has made "a credible and compelling showing of actual innocence." Id. at 518.[11] For a claim of innocence to be credible, "it must be supported by 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" Rivas, 687 F.3d at at 541 (quoting Schlup v. Delo, 513 U.S. 298, 324 (1995)). "For the claim to be 'compelling,' the petitioner must demonstrate that 'more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt.'" Id. (quoting House v. Bell, 547 U.S. 518, 538 (2006)). See also McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013) ("[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass" to overcome AEDPA's statutory bar, but "tenable actual-innocence gateway pleas are rare" because a petitioner cannot "'meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" (quoting Schlup, 513 U. S. at 329)).

Castilo does not present a credible or compelling claim of actual innocence. To start, he does not dispute that he committed the predicate acts underlying his conviction, nor does he provide any new evidence to the contrary. See Castilo Pet., 12-13 ("The facts to which Affiant admits now are the same facts to which he admitted when he pled guilty."). Moreover, he does

---

[11] The "procedural actual innocence gateway exception applies even when a petitioner's conviction is, as here, the result of a guilty plea." Stern v. United States, No. 09 Civ. 6044 (PAC) (FM), 2013 WL 71773, at *9 n.17 (S.D.N.Y. Jan. 4, 2013) (citing Bousley v. United States, 523 U.S. 614, 623-24 (1998) and Friedman v. Rehal, 618 F.3d 142, 152 (2d Cir. 2010)), Report & Recommendation, adopted by 2013 WL 989382 (S.D.N.Y. Mar. 14, 2013).

10

not provide a legitimate explanation as to why he could not have made his claim of innocence at the time of his appeal. Instead, Castilo now argues only that he is innocent of an element underlying his RICO conviction. Castilo Aff., 3; Castilo Pet., 4. A conviction under RICO requires that "the defendant participated or conspired to participate, directly or indirectly, in the conduct of an enterprise through a pattern of racketeering activity." United States v. Burden, 600 F.3d 204, 214 (2d Cir. 2010). "At least two predicate acts are required to prove a pattern." Id. at 216; 18 U.S.C. § 1961(5). The enterprise with which the defendant was associated or employed by must have "engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. 1962(c). See also United States v. Escobar, 462 Fed. Appx. 58, 63 (2d Cir. 2012); United States v. Miller, 116 F.3d 641, 671 (2d Cir. 1997).

Castilo argues he is innocent because the 165th Street Organization, the enterprise with which he was associated, did not have a substantial effect on interstate commerce. Castilo Pet. 6-9.[12] However, Castilo is incorrect that a *substantial* effect is required to meet the interstate commerce element under RICO. The Second Circuit as well as courts in this District have consistently held that with regard to the effect of an enterprise's activities, "[o]nly a minimal effect on interstate commerce need be proven." United States v. Price, 443 Fed. Appx. 576, 579 (2d Cir. 2011); see also United States v. Mejia, 545 F.3d 179, 203-04 (2d Cir. 2008) ("[A]ny . . . conduct having even a de minimis effect on interstate commerce suffices" to establish that an enterprise "engages in or affects interstate commerce."); Cooper v. United States, 11 Civ. 3054 (PKC), 04 Cr. 801 (PKC), 2011 WL 5563443, at *2 (S.D.N.Y. Nov. 15, 2011) (approving jury charge regarding interstate commerce element of RICO instructing that "the jury need not find a

---

[12] Although, for the most part, Castilo asserts his innocence based on the claim that the 165th Street Organization's activities did not *substantially* affect interstate commerce, at times he seems to argue he is innocent because "a reasonable jury could not conclude that [the] enterprise" affected interstate commerce at all. Castilo Pet., 9; see also id. at 5 ("[T]here is no evidence in [t]his case that the 165th Street Organization was involved in any sort of economic enterprise."). The Court will therefore address both arguments.

11

substantial effect on interstate or foreign commerce, that an individual defendant did not need to know the enterprise was engaged in interstate or foreign commerce, and that interstate commerce needed to be affected . . . in some minimal way") (internal quotations omitted). Thus, there is no merit to Castilo's claim that he is innocent because the enterprise did not substantially affect interstate commerce. Only a minimal effect is necessary to satisfy RICO and, as he explicitly acknowledges in his petition, "the 165th Street Organization's violent enterprise surely affected Interstate Commerce in some way." Castilo Pet., 8.[13]

To the extent that Castilo asserts his innocence by arguing that the 165th Street Organization did not affect interstate commerce *at all*, that claim is belied by the record. When Castilo pled guilty, he not only admitted that he traveled to New Jersey to rob and kidnap a drug dealer and was aware of the probability that the drug dealer would be murdered (see Plea Tr., 13-17; Information, 3-4), thereby establishing the predicate acts required under 18 U.S.C. § 1962(c), he also specifically admitted that the 165th Street Organization was responsible for these acts, that he was a member of the Organization, and that it was "generally engaged in acts of robbery or kidnapping or trafficking in narcotics in order to further its purposes." Plea Tr., 14. As made

---

[13] Castilo also argues he is innocent because of two Supreme Court decisions that "broke new ground" in requiring an enterprise's activities to substantially affect interstate commerce. Castilo Pet., 15 (citing Jones v. United States, 529 U.S. 848 (2000) and United States v. Morrison, 529 U.S. 598, 617 (2000)). As a threshold matter, both of these cases were decided before Castilo pled guilty on December 19, 2000 and thus Castilo cannot claim innocence based on an intervening change in the law. Moreover, even if Castilo had convincingly shown a shift in the law, there is no consensus among courts "as to whether an actual innocence claim under Schlup may be based on an intervening change in the law, rather than simply 'new reliable evidence.'" Stern, 2013 WL 71773, at *10 (citing cases). Finally, neither case cited by Castilo changed the well-settled rule that a racketeering enterprise's activities need only minimally affect interstate commerce. Jones simply held that committing arson of privately owned property was not subject to federal prosecution under 18 U.S.C. § 844(i) because such a residence was not used in or for any activity affecting interstate or foreign commerce. 529 U.S. at 851. And Morrison, which Castilo argues expanded upon the Court's decision in United States v. Lopez, 514 U.S. 549 (1995), did not alter the interstate commerce requirement under RICO. See United States v. Feliciano, 223 F.3d 102, 119 (2d Cir. 2000) (finding that Morrison did not change requirement that enterprise's activities need only have minimal effect on interstate commerce).

clear in Count One of the Information, "the 165th Street Organization was a criminal organization whose members and associates engaged in robbery, robbery of individuals who trafficked in narcotics, kidnapping, murder, other acts of violence and narcotics trafficking," and Castilo was "employed by and associated with . . . the 165th Street Organization, *which was engaged in, and the activities of which affected, interstate and foreign commerce*." Plea Tr., 8; Information, 1, 3-4 (emphasis added). The Information further stated the 165th Street Organization operated in New York, New Jersey, and Pennsylvania and its members and associates participated in narcotics trafficking in the Bronx, New Jersey, and Pennsylvania. Information, 2-3. Castilo has not submitted any new evidence that would lead a reasonable juror to have reasonable doubt about his conviction under RICO or that the activities of the 165th Street Organization affected interstate commerce.

Castilo states that "[a]lthough there may have been some evidence to suggest that members of the 165th Street Organization had previously been arrested for trafficking drugs, an activity that is economic, the Government had not established that those drug charges were [ ]related to the activities of the 165th Street Organization." Castilo Pet., 5.[14] However, as noted, Castilo explicitly admitted that the 165th Street Organization engaged in narcotics trafficking and activities affecting interstate commerce, including their responsibility for his travel across state lines. Information, 1, 3, 4. By pleading guilty, he waived the right to have the government prove those facts at trial. See Plea Tr., 8-9 (affirming that Castilo understood he had the right to plead not guilty and proceed to a jury trial where the burden would be on the government to prove his guilt beyond a reasonable doubt). Indeed, "[w]hen the government

---

[14] Castilo wrote in his petition that "the Government had not established that those drug charges were *unrelated* to the activities of the 165th Street Organization." Castilo Pet., 5. However, given the nature of his argument, the Court believes Castilo erroneously used the word *unrelated* when he meant *related*. The Court thus interprets this sentence in a manner consistent with Castilo's overarching argument.

charges a defendant with a crime . . . the government is constitutionally required to prove the charge beyond a reasonable doubt." United States v. Espinal, 634 F.3d 655, 664 (2d Cir. 2011). However, the government is relieved of that burden if a defendant pleads guilty pursuant to the procedural requirements set forth by the Federal Rules of Criminal Procedure. Id. (citing Fed. R. Crim. P. 11(b)). As Castilo's guilty plea complied with Rule 11(b) of the Federal Rules of Criminal Procedure, he has waived the right to argue that the government has not proved that the activities of the 165th Street Organization affected interstate commerce.

### E. Waiver

Although Castilo is clearly time-barred under AEDPA's statute of limitations, the fact that he waived his right to file any appeal or collaterally attack his sentence through a writ of habeas corpus further warrants dismissal of his § 2255 petition. Plea Tr., 12; Sentencing Tr., 3. The Second Circuit and courts in this District have held that that knowing and voluntary waivers of the right to file habeas petitions pursuant to § 2255 are valid and enforceable. See, e.g., Frederick v. Warden, 308 F.3d 192, 195 (2d Cir. 2002) ("There is no general bar to a waiver of collateral attack rights in a plea agreement."); Garcia-Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001) (per curiam) (dismissing § 2255 petition without reaching merits because waiver in plea agreement was valid and enforceable); Wiltshire v. United States, Nos. 11 Civ. 866 (PKC), 11 Civ. 869 (PKC), 2011 WL 4336675, at *3-4 (S.D.N.Y. Sept. 14, 2011) (declining to reach merits of § 2255 petitions where petitioners were not deprived of fundamental rights and pleas were knowing and voluntary); Tremblay v. United States, No. 08 Civ. 7030, 2009 WL 1055007, at *8 (S.D.N.Y. Apr. 20, 2009) ("When a defendant signs a plea agreement containing a waiver of the right to file a habeas petition, the waiver is enforceable provided that the plea agreement was 'entered into knowingly and voluntarily, and with awareness of his waiver of . . . collateral attack.'") (quoting Garcia-Santos, 273 F.3d at 508)).

In his petition, Castilo argues that his plea was unintelligent and should be deemed void. Castilo Pet., 2, 9. He maintains that he (as well as his lawyer, the prosecutor, and the district judge) misunderstood the reach of RICO and that he only pled guilty based on a belief that a minimal effect on interstate commerce was enough to satisfy that element of the statute. Castilo Pet., 9. However, as discussed above, such minimal effects are indeed sufficient, and thus Castilo "correctly understood the essential elements of the crime with which he was charged." Castilo Pet., 9 (citing Bousley, 523 U.S. at 618). Therefore, as Castilo's plea was intelligent and voluntarily given and because the Court sentenced Castilo to the agreed-upon sentence, there are no plausible bases to overcome his waiver of the right to file a habeas petition.

## III. CONCLUSION

For all the foregoing reasons, I recommend that the Petition be dismissed. Further, I recommend that the Court decline to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A), because Castilo has not "made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2).

### PROCEDURE FOR FILING OBJECTIONS
### TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Paul G. Gardephe, United States Courthouse, 40 Foley Square, Room 2204, New York, New York, 10007, and to the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Gardephe. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund

15

v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

If Castilo does not have access to cases cited herein that are reported on LEXIS/WESTLAW, he should request copies from the Court.

Dated: New York, New York
November 12, 2013

JAMES L. COTT
United States Magistrate Judge

**A copy of this Report and Recommendation is being sent by mail to:**

Julio Castilo
Federal Correctional Institution
P.O. Box 699
Estill, SC 29918

16